UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GENERAL ELECTRIC CO.                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:04-CV-401-R

ANSON STAMPING CO. INC., et al.                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of Anson Stamping Company, Inc.,

and Anson Machine & Manufacturing Company ("Anson") to amend the judgment entered by

the Court on August 25, 2005 (DNs 32, 33).  The judgment denied the motion of General

Electric Company (GE) to vacate a $1,020,029.90 arbitration award entered in favor of Anson by

retired Judge, Michael O. McDonald on April 27, 2004.  Anson requests the Court to amend its

judgment to set forth the specific amount of interest due based on that portion of the award

which provides that "Anson shall recover as an award from General Electric Company the sum

of $1,020,029.90 **with interest as on a judgment starting ten (10) days hence**."  (DN 33, Exh.

1 Ruling in Arbitration).

## ARGUMENTS

Anson argues that the above language refers to KRS 360.040, Kentucky's post-

judgment interest statute.  The statute provides, "A judgment shall bear twelve percent (12%)

interest compounded annually from its date."  Based on this 12%  rate, Anson calculates that it is

due annual interest of $122,403.58 for May 7, 2004, until May 6, 2005, the first year beginning

ten days after entry of the revised arbitration award.  Anson calculates that it is entitled to

receive $375.59 in daily interest for the second year of post-award annual interest from May 7,

2005, until the date on which the amended judgment is entered.[1]  Anson has tendered, along with

its reply brief, a proposed order and judgment that construes its motion to amend as being a

request to confirm the arbitration award pursuant to Section 9 of the Federal Arbitration Act, 9

U.S.C. § 9.

General Electric has filed an opposition to Anson's motion to alter.  GE argues

that Anson is time-barred from seeking confirmation of the arbitration award based on the statute

of limitations created by 9 U.S.C. § 9 (1999), which provides:

> If the parties in their [arbitration] agreement have agreed that a
> judgment of the court shall be entered upon the award made
> pursuant to the arbitration, and shall specify the court, then **at any
> time within one year after the award is made, any party to the
> arbitration may apply to the court so specified for an order
> confirming the award,** and thereupon the court must grant such
> an order unless the award is vacated, modified or corrected as
> prescribed in sections 10 and 11 of this title.  If no court is
> specified in the agreement of the parties, then such application may
> be made to the United States court in and for the district within
> such award is made.

9 U.S.C. § 9 (1999) (emphasis added).  See Photopaint Technologies, LLC v. Smartlens Corp.,

335 F.3d 152 (2nd Cir. 2003) (holding that § 9 of the FAA imposes a one-year statute of

limitations on the filing of a motion to confirm an arbitration award).  But see, Kentucky River

Mills v. Jackson, 206 F.2d 111, 120-21 (6th Cir.), cert. denied, 346 U.S. 887 (1953); Wachovia

Securities, Inc. v. Dominic Gangale, 125 Fed. Appx. 671, 676 (6th Cir. 2005) ("the district court

---

[1]  Anson calculates this daily amount of interest by adding the original arbitration award of $1,020,029.90 to the $122,403.58 in annual interest for the first year to arrive at $1,142,433.40.  Anson calculates that the annual interest for the second year on this adjusted amount will be $137,091.91, or a daily interest amount of $375.59.  (DN 37, Exh. 6, Proposed Order).

correctly noted that the limitation on the time for seeking confirmation in the statute [9 U.S.C. § 9] is permissive, not mandatory....") (citing <u>Kentucky River Mills</u>).

If Anson is not procedurally barred, GE argues that the reference to "interest as on a judgment...." in the arbitration award does not permit the Court to impose 12% interest via KRS § 360.040. Post-judgment interest is not a matter of state substantive law reasons GE, but rather one of federal law pursuant to 28 U.S.C. § 1961. <u>In re Poli</u>, 298 B.R. 557, 563 (Bkrtcy VA 2003). The arbitration award should be treated as the equivalent of a federal judgment, according to GE. <u>Estate of Riddle v. Southern Farm Bureau</u>, 421 F.3d 400, 409 (6th Cir. 2005). Therefore, the controlling statute for calculating interest is supposedly 28 U.S.C. § 1961, rather than KRS 360.040. Interest from the date of entry of Judge McDonald's award should be imposed at a rate that of 1.5%, the weekly average of the one-year constant maturity treasury yield as published by the Board of Governors of the Federal Reserve system for the calendar week before the judgment. See 28 U.S.C. § 1961. GE calculates that the interest owed on the first year following the arbitration award using this rate would be merely $15,264.75 with another $6,452.40 due through September 26, 2005, for a daily interest rate of $42.45 during the second year following entry of the amended arbitration award.

GE continues to argue that if the Court should find that KRS 360.040 is the appropriate statute to determine post-award interest, then this Court should conduct its own evidentiary hearing based on the language of KRS 360.040 that provides,

> When a claim for unliquidated damages is reduced to judgment, such judgment may bear less interest than twelve percent (12%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than twelve percent (12%).

KRS 360.040 (Michie 1982).  GE insists that a 12% interest rate is wildly in excess of any reasonable return that could have been earned by Anson since the time that the arbitration award was entered; therefore, the Court should permit GE to submit proof on the appropriate rate of interest.

Finally, GE asks that the Court clarify its prior final order to weigh the interests of the intervening secured creditors.  GE points out that the Sixth Circuit may dismiss any appeal without prejudice under <u>Delaure v. Kentucky</u>, 269 F.3d 540 (6th Cir. 2001) and <u>General Acquisitions v. GenCorp</u>, 23 F.3d 1022 (6th Cir. 1994) if the Court does not weigh the competing factors against entry of a final judgment caused by the presence of these intervening creditors.

Anson counters in its reply that <u>Kentucky River Mills</u> holds the language of 9 U.S.C. § 9 (1999) to be permissive rather than mandatory, a holding that the <u>Wachovia Securities</u> case confirms.  (DN 37)  Anson also insists that the arbitration award was never intended to be, and is not, a judgment entered by a federal court.  The decisions cited by General Electric all are federal cases, and therefor do not apply in the present context.  Further, Judge McDonald intended by his award that interest be added to the *quantum meruit* recovery to ensure that Anson is fully compensated for the inevitable delays due to General Electric's resistence to making payment.  Anson points out that GE never previously complained about the interest component of the award.  Anson concludes that the arbitration award is subject to KRS 360.040, which remains the substantive law of Kentucky that the parties agreed to apply in PSA 2.  No hearing is required, or even permissible, at this stage of the proceedings, to alter the plain language of the arbitration award, which expressly requires that Anson recover $1,020,029.90 **"with interest as on a judgment starting ten (10) days hence**."  (DN 37, Exh. 1, Ruling in Arbitration).

4

## LEGAL ANALYSIS

### *Confirmation of the Award.*

The first task for the Court is to determine whether Anson's motion to amend the final order of August 25, 2005, may be addressed on its merits as a motion to confirm the arbitration award. To answer this question, the Court must decide whether the language of Section 9 of the FAA is merely permissive, so that the passage of more than one year after entry of the arbitration award will not bar this Court from confirming the award now that the motion to vacate has been denied; or, whether the language of § 9 of the FAA creates a mandatory statute of limitations that compels the prevailing party at arbitration to bring a timely motion to confirm "within one year after the award is made...." or be left with only an action of law. 9 U.S.C. § 9 (1999).

Here, the disputed award was entered on April 27, 2004. Not until Anson filed its reply in support of its motion to amend on October 11, 2005, nearly six months beyond the presumptive deadline, did Anson specifically request confirmation by name. If the language of 9 U.S.C. § 9 (1999) is a mandatory statute of limitations, that requires a formal "motion to confirm," then Anson may be time-barred from seeking confirmation, absent some other consideration such as tolling of the limitation period or a liberal construction of what constitutes a motion to confirm. Without confirmation, Anson will be required to file a separate action at law to attempt to collect its favorable arbitration award. On the other hand, if the language of 9 U.S.C. § 9 (1999) is merely permissive based on the use of the phrase "*may* apply to the court so specified for an order confirming the award," then Anson's request for confirmation will easily overcome GE's procedural challenge. 9 U.S.C. § 9 (1999) (emphasis added).

5

Unfortunately, the language of § 9 that relates to confirmation is far from clear. The ambiguity in the language of the statute has resulted in a split among the federal circuit courts on this exact issue.  See Connolly v. Arthur Anderson, LLP, No. 04 C 7458, 2005 WL 1206516 at *3 (N.D. Ill. Feb. 24, 2005) ("Debate exists as to whether the language in § 9 constitutes a mandatory statute of limitations period."); Teresa Elliott, Conflicting Interpretations of the One-Year Requirement on Motions to Confirm Arbitration Awards, 38 Creighton L. Rev. 661, 662 (April 2005) ("Currently, there exists a circuit court split regarding language in § 9 of the FAA.") Thomas Oehmke, 3 Commercial Arbitration § 128:22 (West 2005) ("The federal circuits are divided on whether a petition under FAA § 9 for summary confirmation of an award must be filed within one year after the award is made or may be filed after that time.")

The pertinent question is on which side of the split does the Sixth Circuit find itself.  In other words, does Sixth Circuit case law treat the relevant language of 9 U.S.C. § 9 (1999) as being permissive or does the Sixth Circuit, assuming that it has spoken unequivocally on the matter, join those courts that deem 9 U.S.C. § 9 (1999) to create a mandatory one-year statute of limitations.  William Howard, Ph.D., Annotation, Statute of Limitations Under Federal Arbitration Act, 3 A.L.R.2d 419 (2005) (collecting cases interpreting § 9 of the FAA).

Anson insists that the Sixth Circuit has joined the permissive camp based on two Sixth Circuit cases.  The first is an older decision announced in Kentucky River Mills v. Jackson, 206 F.2d at 111.  The second and more recent unpublished decision that arguably speaks to this issue is Wachovia Securities, Inc. v. Gangale, 125 Fed. Appx. 671 (6th Cir. 2005).  Examination of both decisions is now appropriate.

Kentucky River Mills involved an action at law brought by the assignee of a New

6

York fiber broker against a Kentucky spinning mill factory. The dispute involved payment for

95 tons of Brazillian caroa, a spinnable plant fiber that the mill had ordered in early 1944, but

declined to accept after the shipment arrived late. Ultimately, a substantial *ex parte* arbitration

award was rendered against the mill owner in the state of New York. This arbitration award was

upheld by the federal district court in the face of a challenge to the contract that contained the

parties' arbitration provisions.

The mill owner raised a host of arguments on appeal to the Sixth Circuit in an

attempt to upend the district court decision that affirmed the arbitration award. One of the

arguments involved the provision of 9 U.S.C. § 9 currently in dispute. The Sixth Circuit offered

the following discussion, which Anson now insists establishes the permissive nature of § 9:

> [A]ppellant contends that the award in favor of Smith & Bird could
> not be enforced by an action at law commenced more than one
> year after the award was made. This claim is based upon the
> proposition that the enforcement of the award in this case is barred
> by Section 9 of the United States Arbitration Act, which provides
> that: "If the parties in their agreement have agreed that a judgment
> of the court shall be entered upon the award made pursuant to the
> arbitration, and shall specify the court, then at any time within one
> year after the award is made any party to the arbitration may apply
> to the court so specified for an order confirming the award, and
> thereupon the court must grant such an order unless the award is
> vacated, modified, or corrected as prescribed in sections 10 and 11
> of this title. If no court is specified in the agreement of the parties,
> then such application may be made to the Untied States court in
> and for the district within which such award was made." The
> language of the foregoing section as to application to the court for
> an order is not mandatory, but permissive. See United Fuel Gas
> Co. v. Columbian Fuel corp., 4 Cir., 165 F.2d 746; Lehigh
> Structural Steel Co. v. Ruse Engineering co., 61 App. D.C. 224, 59
> F.2d 1038. A party may, therefore, apply to the court for an order
> confirming the award, but is not limited to such remedy. Prior to
> the enactment of the United States Arbitration Act, an action at law
> on the award was the proper method of enforcing it. Red Cross
> Line v. Atlantic Fruit co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed.

> 582.  Enforcement of the award in this case is not barred by the one-year limitation contained in Section 9 of the Act, which provides for the summary remedy of confirmation of the award by the court.

Kentucky River Mills, 206 F.2d at 120.

At first blush, the above quotation would not appear to be unshakable support for the permissive interpretation of § 9 of the FAA.  First, and most importantly, Kentucky River Mills did not involve a summary confirmation proceeding.  Indeed, the entire point of the above quotation appears to be that the one-year language of § 9 of the Act simply did not apply since the New York broker, Smith & Bird, did not rely on the statutory confirmation process, but instead chose the traditional action at law in existence at the time the FAA was enacted in 1925 to enforce the award.

This view explains why in the above quote the Sixth Circuit states that a party "may apply to the court for an order concerning the award, but is not limited to such remedy." Consequently, Kentucky River Mills may be logically considered to be "permissive" only in the sense that the court indicates that a party who receives a favorable arbitration award may choose between the more abbreviated statutory confirmation process of the FAA or may instead rely upon the traditional common law action to enforce the award.  Read in this fashion, the above quotation makes imminent good sense.

Nevertheless, Anson cannot be faulted for reading Kentucky River Mills more broadly.  In fact, a series of federal court decisions exists that equate Kentucky River Mills with the proposition that § 9 of the FAA is permissive, despite the fact that one might reasonably ask permissive in what sense.  See gen. Philip L. Bruner and Patrick J. O'Connor, Jr., Construction Law, § 20:112.50 (West 2005)("The use of the word "may" in the ... statutory language [of § 9]

8

has lead a number of courts to conclude that the one-year time limitation is permissive."]  The most immediately relevant of these decisions, the only other one from the Sixth Circuit, is the unpublished decision in <u>Wachovia Securities</u>.  <u>Wachovia</u>, 125 Fed. Appx. at 676-677.

The <u>Wachovia</u> decision involved a long-running securities arbitration dispute that spawned a series of lawsuits in state and federal court between a security brokerage firm and an investor.  Recitation of the complicated procedural history in <u>Wachovia</u> would not serve the interest of this opinion.  Essentially, one of the issues discussed by the Sixth Circuit on appeal was whether a motion for confirmation of the arbitration award, filed one year and two days after the arbitrator's decision, was timely.

In addressing the issue, the panel offered the observation in *dicta* that, "the District Court correctly noted that the limitation on the time for seeking confirmation in the statute [9 U.S.C. § 9] is permissive, not mandatory, and allowed the complaint to proceed."  As support for this observation, the panel cited to <u>Kentucky River Mills v. Jackson</u>, 206 F.2d 111, 120 (6th Cir. 1953).  The Court then went on, however, to immediately hold that the complaint, in any event, appeared to be timely as the one-year time period ended on a Saturday and therefore by operation of Fed.R.Civ.P. 6(a) was automatically extended to the next business day, two days later, on Monday, October 21, 2002.  <u>Id</u>.  The Court therefore did not rest its decision in any sense on the permissive nature of § 9 of the FAA, but instead relied on the Federal Rules of Civil Procedure to determine the request for confirmation to be timely filed.  The result of the above discussion is that neither <u>Kentucky River Mills</u> nor <u>Wachovia Securities</u> is unassailably supportive of a permissive interpretation of the statute.

This observation does not end the matter.  As noted, other federal courts have

read <u>Kentucky River Mills</u> as supportive of the permissive interpretation of § 9.  For example, one of the leading cases is <u>Sverdrup Corp. v. WHC Constructors, Inc.</u>, 989 F.2d 148, 150-51 (4th Cir. 1993), which involved a construction dispute taken to arbitration.  After arbitration resulted in a favorable award to Sverdrup Corporation, Sverdrup attempted to confirm the award more than one year after its entry.  <u>Id</u>. at 149.  The district court dismissed the arbitration-related claims based on its view that Sverdrup's motion to enter the arbitration award as a judgment was an untimely motion to confirm filed beyond the one-year limitation period of § 9 of the FAA.

The Fourth Circuit in <u>Sverdrup</u> rejected the decision of the district court with the following reasoning:

> The language of the foregoing section [§ 9 of FAA] as to application to the court for an order is not mandatory, but permissive ... Enforcement of the award in this case is not barred by the one-year limitation contained in section 9 of the Act which provides for the summary remedy of confirmation of the award by the court.  <u>Kentucky River Mills v. Jackson</u>, 206 F.2d 111, 120 (6th Cir.), <u>cert. denied</u>, 346 U.S. 887 (1953); <u>Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.</u>, 452 F. Supp. 573, 575 (D. Neb. 1978); <u>Brown v. Bridgeport Rolling Mills Co.</u>, 245 F. Supp. 41, 45 n. 7 (D. Conn. 1965).  See also <u>Derwin v. General Dynamics Corp.</u>, 719 F.2d 484, 490 n. 5 (1st Cir. 1983) (state arbitration statute construed); <u>Heffner v. Jacobson</u>, 100 N. J. 550, 498 A.2d 766, 768-69 (1985) (state arbitration statute stating party 'may' commence action to confirm within three months was permissive).
>
> A persuasive textual argument bolsters this interpretation.  The use of the word 'may,' as opposed to mandatory language, has been deemed to have been of critical importance in determining the permissive nature of § 9.  The word '[m]ay in a statute ... normally confers a discretionary power, not a mandatory power, unless the legislative intent, as evidenced by the legislative history, evidences a contrary purpose.'  <u>Dalton v. United States</u>, 816F.2d 971, 973 (4th Cir. 1987); see also <u>Koch Refining Co. v. United States Dept. of Energy</u>, 497 F. Supp. 879, 891 (D. Minn. 1980) ([W]here the words 'shall' and 'may' are used in the same statute or regulation, 'shall' is usually interpreted to impose a mandatory obligation and

'may' is usually interpreted to grant discretion.") (citing Farmers Bank v. Federal Reserve Bank, 262 U.S. 649, 662-63, 43 S. Ct. 651, 656-57, 67 L.Ed. 1157 (1923)).  However, this rule is not inflexible, and there are situations where legislative intent indicates that the term "may" should be interpreted as mandatory. Dalton, 816 F.2d at 973.

An examination of the FAA's language gives rise to the inference that Congress understood the plain meaning of "may" to be permissive.  Section 9 of the FAA states that any party "may apply" for a confirmation order by the court "must grant" the order absent a modification or vacation under §§ 10 or 11.  9 U.S.C. § 9. Furthermore, under § 12 of the FAA, a motion to modify "must be served" within three months of the award.  9 U.S.C. § 12.  This Court has previously concluded that this language in § 12 is mandatory, and thus, modification motions made beyond three months after the award are time barred.  Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986).  In this instance, the use of alternating permissive and mandatory language throughout the FAA indicates that Congress was cognizant of the difference in meaning between "may" and "must" and intended that the term "may" be construed as permissive.

Sverdrup Corp., 989 F.2d at 151.  See also Paul Allison, Inc. v. Minikin Storage of Omaha, 452

F. Supp. at 575 ("[T]he case law indicates that the 'one-year' provision at section 9 of the

Arbitration Act is not tantamount to a statute of limitation.") (citing Kentucky River Mills);

Brown v. Bridgepoint Rolling Mills Co., 245 F. Supp. at 45 n. 7 ("[T[he summary remedy of

confirmation of an award provided by § 9 has been held not barred by the one-year limitation

contained therein which is not mandatory, but permissive.") (citing Kentucky River Mills);

Derwan v. General Dynamics Corp., 719 F.2d at 490 n. 5("Even under the Federal Arbitration

Act, courts have held that Section 9's language is permissive, thus allowing actions to confirm

where justice requires after the apparent one-year limitations period had elapsed.") (citing

Kentucky River Mills); Bernstein Seawell & Cove v. Bosarg, 813 F.2d 726, 733 (5th Cir. 1987)

("The procedural requirements of 9 U.S.C. § 9, however, are permissive, not mandatory.")

(citing <u>Kentucky River Mills</u>); <u>Heffner v. Jacobson</u>, 498 A.2d at 768-69 ("Had the Legislature intended to make the statute mandatory, it would not have used permissive direction that a party 'may' within three months of delivery of an arbitration award commence a summary action.") (citing <u>Kentucky River Mills</u>).

Not all courts read <u>Kentucky River Mills</u> in a fashion similar to those identified above.  For example, in <u>Insurdata Marketing Systems, LLC v. Healthplan Services, Inc.</u>, 352 F. Supp.2d 1252 (M.D. Fla. 2005), the District Court for the Middle District of Florida read the decision only to indicate that the prevailing party in arbitration had the opportunity either to pursue summary confirmation under the federal statute or to seek the traditional action at law to confirm the award.  <u>Id</u>. at 1254-55.  As the district court explained:

> In addition to summary confirmation pursuant to federal or state
> statute, enforcement of an arbitral award is available by civil
> action on the award.

<u>Id</u>. (citing <u>Kentucky River Mills v. Jackson</u>, 206 F.2d 111, 120 (6th Cir.), <u>cert. denied</u>, 346 U.S. 887 (1953) ('[a] party may, therefore, apply to the court for an order confirming the award, but is not limited to such remedy.  Before the enactment of the United States Arbitration Act, an action at law on the award was the proper method of enforcing it.")) The Florida District Court therefore reads <u>Kentucky Mills</u> in a similar fashion to that suggested by General Electric.

The benchmark decision to part ways with the broad reading of <u>Kentucky River Mills</u> is the Second Circuit decision of <u>Photopaint Technologies, LLC v. Smartlens Corp.</u>, 335 F.3d 152 (2nd Cir. 2003).  In <u>Photopaint Technologies</u>, the Second Circuit addressed the issue of confirmation under § 9 of the FAA for the first time.  It rejected outright the notion that the mere use of the term "may" rather than "must" automatically meant that § 9 of the Act is permissive

rather than a mandatory statute of limitations.  <u>Photopaint Technologies</u> also directly rejected the reasoning of the <u>Sverdrup</u> decision and the related Eighth Circuit decision that adopted <u>Sverdrup</u>.  See <u>Val-U Const. Co. of S.D. v. Rosebud Siux Tribe</u>, 136 F.3d 573, 581 (8th Cir. 1988) ("We hold that § 9 is a permissive statute and does not require that a party file for confirmation within one year.  If Congress intended for the one year period to be a statute of limitations, then it could have used the word 'must' or 'shall' in place of 'may' in the language of the statute.") (citing <u>Sverdrup Corp.</u>).

The Second Circuit rejected <u>Sverdrup</u> and <u>Val-U Const.</u> based on two primary authorities.  The first authority was the Supreme Court decision in <u>Cortez Byrd Chips v. Bill Harbert Const. Co.</u>, 529 U.S. 193, 199 (2000).  The second authority was an earlier Second Circuit case of <u>Seetransport Wiking Trader Schiffarhstgesellschaft MBH & Co. v. Navimpex Centrala Navala</u>, 989 F.2d 572 (2nd Cir. 1993).  Both <u>Cortez Byrd Chips</u> and <u>Seetransport</u> deserve further comment as they will weight heavily in the Court's analysis.

In <u>Cortez Byrd Chips</u>, the Supreme Court considered whether the word "may" used in the context of the FAA's venue provision in § 9 is permissive or mandatory.  The case involved an arbitration award rendered in Alabama to resolve a dispute between a construction company that had agreed to build a wood chip mill in Mississippi for Cortez Byrd Chips.  After the construction company received the favorable award, Cortez Byrd sought to vacate the award in the District Court for the Southern District of Mississippi.  The construction company brought an action to confirm the award one week later in the Northern District of Alabama where the award had been entered.  <u>Cortez</u>, 529 U.S. at 196.

Cortez Byrd moved to dismiss, transfer or stay the Alabama action.  The Alabama

District Court denied the motion based on its view that venue was proper only in Alabama where the award was rendered.  The Eleventh Circuit affirmed, and the Supreme Court granted certiorari to resolve a split among the circuits over the permissive or mandatory character of the FAA's venue provisions.  Id.  As in Sverdrup, the parties focused their arguments on the use of the term "may" in the venue provisions of § 9 to debate whether the venue provisions were merely permissive.  The Supreme Court, however, declined to focus its analysis solely on the language of the statutes to the detriment of their legislative history, purpose and policy considerations.

> In the words of the Court:

> > Enlightenment will not come merely from parsing the language, which is less clear than either party contends.  Although 'may' could be read as permissive in each section [of the FAA] ..., the mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority.  Certainly the warning flag is up in this instance.  While [appellant] points to clearly mandatory language in other parts of the Act as some indication that 'may' was used in a permissive sense, 9 U.S.C. §§ 2, 12 [appellee] calls attention to a contrary clue and even more obviously permissive language elsewhere in the Act ... Each party has a point, but neither point is conclusive.  The answer is not to be had from comparing phrases.

Id. at 199.  See Photopaint Technologies, LLC, 335 F.3d at 156-57 (discussing Cortez Byrd Chips).

The Supreme Court concluded, after a review of the general venue statute in force at the time the FAA was enacted, that the venue provisions of the FAA were intended to liberalize the options of the parties so that they could proceed either in the district in which the award was rendered or the district where the defendant resided in keeping with traditional venue rules.  Id. at 199-201.  In adopting this permissive interpretation of the FAA venue provisions,

14

the Supreme Court sought to: (1) avoid disrupting established precedent and avoid "needless tension" between various sections of the FAA; (2) further the "statutory policy of rapid and unobstructed enforcement of arbitration agreements,"; and (3) give attention to the "practical consequences" of its liberalized interpretation of the venue provisions. Id. at 202-04. These same considerations will come to bear later in this Court's resolution of the split among the circuits on the mandatory or permissive nature of § 9's confirmation provisions.

The other guidepost for the Second Circuit in Photopaint was the Seetransport decision, a decision rendered by the Second Circuit a decade earlier. Although Anson attempts to distinguish Seetransport based on its interpretation of § 207 of the International Convention on Recognition and Enforcement of Foreign Arbitral Awards (Convention), the language of 9 U.S.C. § 207 interpreted in Seetransport is highly analogous to § 9 of the FAA. Section 207 of the Convention provides:

> Within three years after an arbitral award falling under the
> Convention is made, any party to the arbitration may apply to any
> court having jurisdiction under this chapter for an order confirming
> the award as against any other party to the arbitration.

9 U.S.C. § 207 (1999).

In Seetransport, the question at issue was when the arbitration award was "made" for the purpose of starting the running of the three-year statute of limitations. Although the permissive or mandatory character of § 207 was not explicitly debated, the Second Circuit in Seetransport held that a petition filed beyond the Convention's three-year period of limitations was time-barred. Based on Cortez Byrd Chips and Seetransport, the Second Circuit held as follows:

> [W]e read the word 'may' in § 9 as permissive, but only within the

15

> scope of the proceeding adverbial phrase: 'at any time within one
> year after the award is made.'  We therefore hold that § 9 of the
> FAA imposes a one-year statute of limitations on the filing of a
> motion to confirm an arbitration award under the FAA.  Our
> construction of the text is not inevitable, but it is intuitive: for
> example, tax returns may be filed any time up to April 15, but one
> senses at once that the phrase is permissive only up to a point.

Photopaint, 335 F.3d at 158.  See Kerr-McGee Refinery Corp. v. M/T Triumph, 924 F.2d 467,

471 (2nd Cir. 1991) (§ 9 cited for the proposition that "under the Arbitration Act a party has one

year to avail itself of summary proceedings for confirmation of an award."); The Hartbridge, 57

F.2d 672, 673 (2nd Cir. 1932) (suggesting that although the language of § 9 is permissive, "the

privilege conferred by § 9" is the privilege "to move at any time within the year" for

confirmation).

The Second Circuit continued in Photopaint to take on the policy arguments made

by the Fourth Circuit in Sverdrup as justification for its permissive interpretation of § 9.  The

Sverdrup court had reasoned that reading § 9 as a strict statute of limitations would be an

exercise in futility.  Such an interpretation would in the court's view in Sverdrup merely

encourage an otherwise time-barred party to bring an action at law.  Such a result was considered

contrary to the fundamental policy of the FAA, which was intended to expedite and simplify

such proceedings.

Photopaint disagreed with Sverdrup on all of these points.  In the Second Circuit's

view, the existence of a separate action at law, long the traditional means of pursuing

enforcement of an arbitration award, was not identical to the summary confirmation proceeding,

but not antithetical to it either.  Photopaint, 335 F.3d at 159.  The Second Circuit explained that:

> It was therefore not 'futile' for Congress to have specified a statute
> of limitations for the filing of summary proceedings: consistent

16

> with the wording of the statute, a party to an arbitration is entitled
> to the benefits of the streamlined proceeding only if, as it may do,
> it files at any time within one year after the award is made.

Id. at 159-160.  Thus, the Second Circuit concluded that its approach encouraged the

fundamental goals of speed and simplicity by giving the affected party an incentive to timely

move for confirmation.

This extended discussion of Photopaint is offered, in part, because Photopaint is

slowly being adopted by the lower federal courts.  Those courts now appear to be rethinking the

debate and the Sverdrup decision itself.  For example, in Maryland Transit Administration v.

National R.R. Passenger Corp., 372 F. Supp.2d 478, 483-84 (D. Maryland 2005), the district

court for the District of Maryland squarely addressed whether the Sverdrup decision remained

persuasive after Photopaint.  The district court concluded that Sverdrup was "a candidate for

reconsideration by the Fourth Circuit," explaining that:

> While I am of course cognizant of the binding nature of Sverdrup
> Corp. v. WHC Constructors, Inc., 989 F.2d 148, 151-56 (4th Cir.
> 1993), holding that the one-year period within which a petition to
> confirm an arbitration award 'may' be filed pursuant to the Federal
> Arbitration Act is 'permissive,' I am also of the view that the
> Fourth Circuit is likely to reconsider that holding in light of
> Photopaint Technologies, LLC v. Smartlands Corp., 335 F.3d 152
> (2nd Cir. 2003) (noting that the Fourth Circuit's decision in
> Sverdrup Corp. has been seriously undermined by the Supreme
> Court's later decision in Cortez Byrd Chips, Inc. v. Bill Harbert
> Construction Co., 529 U.S. 193 (2000), and concluding that the
> one-year period is a statute of limitations).

Maryland Transit Administration, 372 F. Supp.2d at 483.  The Maryland District Court then

continued to dismiss without prejudice the untimely confirmation petition of MTA based on

Photopaint.  Accordingly, even the lower courts in the Fourth Circuit now question the continued

viability of Sverdrup given Photopaint and Cortez Byrd Chips.  See also In re Consolidated Rail

Corp., 867 F.Supp. 25, 28-29 (D.D.C. 1994) (rejecting Sverdrup).

Certainly, Photopaint is widely followed within the Second Circuit and outside it. See Faust v. Fox, No. 05 Civ. 3962(JSR), 2005 WL 1863678 (S.D.N.Y. Aug. 4, 2005) (applying Photopaint to dismiss an untimely petition for confirmation under 9 U.S.C. § 9); Ono Pharmaceutical Co., Ltd. v. Cortech, Inc., No. 03 Civ. 5840 SAS, 2003 WL 22481379 at *4 (S.D.N.Y. 2003) ("Indeed, the one-year limitation period pursuant to 9 U.S.C. § 9 is effective precisely because the summary confirmation mechanism is advantageous to a party seeking confirmation and enforcement of the aribitral award.") (citing Photopaint); InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG, 373 F. Supp.2d 340, 346 (S.D.N.Y. 2005) ("This court may review a motion to confirm an arbitration award if it is filed within one year of the award ...") (citing Photopaint); MBNA America Bank v. Rogers, 835 N.E.2d 219, 221-22 (Ind. App. 2005) (rejecting a permissive interpretation of 9 U.S.C. § 9 based on Photopaint).  But see Riddle v. Wachovia Securities, LLC, No. 8:05CV87, 2006 WL 83101 at *2, n.3 (D. Neb. Jan. 12, 2006) ("In this circuit, however, the one-year period is not a statute of limitations.") (citing Val-U Construction).

The above discussion of the split between the Second Circuit view and the Fourth and Eighth Circuits' view admittedly has been extended, but is necessary to frame several important observations.  First, the Kentucky River Mills decision has been read far too broadly by those courts that unequivocally proclaim the decision to hold that 9 U.S.C. § 9 (1999) is a "permissive" statute.  The true scope of the Kentucky River Mills decision cannot be divorced from its procedural setting.  The decision involved not a confirmation proceeding, but an action at law.  When one appreciates this distinction, the oft-quoted language from the decision makes

18

perfect sense.  Kentucky River Mills endorses a permissive view of § 9 only to the extent that the statute permits a party to choose between a summary confirmation proceeding or a traditional action at law.  Kentucky River Mills did not write away that portion of § 9 of the Act which provides that "at any time *within one year* after the award a party may apply for an order confirming the award."  9 U.S.C. § 9 (1999) (emphasis added).  While admittedly a number of federal courts have read Kentucky River Mills to do just that - - abrogate the one-year requirement - - the decision cannot be fairly read to accomplish this result given its procedural context; nor should it be so read, Wachovia Securities notwithstanding.

Second, the far better course in terms of giving effect to the entire language of 9 U.S.C. § 9 (1999) is to adopt the approach taken by Photopaint, 335 F.3d at 152.  The Photopaint interpretation of the statute promotes, not defeats, the fundamental purpose of the FAA by ensuring that those parties who seek confirmation of a favorable award move to do so in a timely fashion while matters are relatively fresh in the minds of the parties.  After Cortez Byrd Chips, the distinction between "may" and "must" within §§ 9-12 of the FAA is no longer a sound analytical foundation on which to build an argument that § 9 is entirely permissive.

The fact that even the lower courts of the Fourth Circuit, such as the District Court of Maryland in Maryland Transit Administration are now openly calling for reconsideration and possible abandonment of Sverdrup merely serves to underscore the fundamental point that the entire line of cases that rely on what this Court believes to be an indiscriminate reading of Kentucky River Mills is now in serious doubt as to their continued viability.  The natural and necessary reading of 9 U.S.C. § 9 (1999) and its confirmation provisions requires that the courts give full effect to the entire language of the statute including

19

its one-year statute of limitations provision for confirmation proceedings.  Accordingly, this

Court joins with <u>Photopaint</u> and the <u>Photopaint</u> line of cases to hold that § 9 of the Act creates a

mandatory one-year statute of limitations.

This conclusion might cause one to presume incorrectly that Anson is left with

nothing more than an action at law to enforce Judge McDonald's arbitration award.  Such a

presumption, however, would be entirely premature.  The discussion to this point has only

established that § 9 of the Act created a one-year statute of limitations for confirmation

proceedings.  This interim conclusion merely leads to the next question - - what circumstances

will satisfy the one-year statute of limitations requirement.

A number of decisions involving the Federal Arbitration Act discuss when the

one-year statute of limitations of § 9 may be satisfied by proceedings short of an express motion

to confirm.  Anson has cited a number of these decisions to the Court.  They now bear discussion

if for no other reason than to demonstrate that the statute of limitations of § 9 is not sacrosanct in

the sense that a specifically denominated "motion to confirm" needs to be filed to meet the one-

year deadline.  The procedural equivalent of a motion to confirm will suffice even if not

denominated as such.

For example, one fashion in which the one-year statute of limitations of § 9 has

been held to be satisfied is when the prevailing party at arbitration successfully opposes a timely

motion to vacate or modify the award filed by the non-prevailing party pursuant to §12 of the

FAA.  9 U.S.C. § 12 (1999).  Section 12 provides that "notice of a motion to vacate an

arbitration award must be served upon the adverse party or his attorney within three months after

the award is filed or delivered."  <u>Id</u>.  This language creates a mandatory three-month limitation

period in which to file a motion to vacate.  See Occidental Chemical Corp. v. Local 820, Int'l

Chemical Workers Union, 614 F. Supp. 323 (W.D. Mich. 1985) (Section 12 of the Arbitration

Act provides a three-month period of limitation for suits to vacate an arbitration award).  Such a

motion puts at issue the merits of the arbitration award.

       In this instance, GE filed its motion to vacate on July 9, 2004 (DN 1), well within

three months from the date on which Judge McDonald entered his final arbitration award on

April 27, 2004.  The question is what, if any, effect did Anson's opposition to GE's timely

motion to vacate pursuant to § 12 have on the running of the one-year statute of limitations in

which to seek confirmation.  A related and equally important question is what type of motion,

pleading or request, even if not denominated as one strictly for "confirmation," will sufficiently

put the court on notice that the prevailing party in arbitration seeks to have the court summarily

affirm the arbitrator.  On this latter point, the federal courts have been understandably liberal in

their view on what types of motions, filings or pleadings will be construed to be the equivalent of

a motion to confirm.  The case law set forth below amply demonstrates that no "magic words"

are required by the confirmation provisions of § 9.  In fact, a motion to dismiss a motion to

vacate an arbitration award repeatedly has been held to satisfy the one-year limitation period.

       In Maidman v. O'Brien, 473 F. Supp. 25, 27 (S.D.N.Y. 1979), the District Court

for the Southern District of New York liberally construed such a motion to dismiss as implicitly

seeking the confirmation of an arbitration award for the purpose of § 9.  To quote the court:

> Primarily, it should be noted that although Evans has not sought to
> have the arbitration decision confirmed pursuant to 9 U.S.C. § 9,
> there is authority for treating such motions to dismiss as implicitly
> seeking that confirmation and when a party objects to an
> arbitration decision on the merits, the possible untimeliness of the
> confirmation application has been viewed as waived.

21

Maidman, 473 F.Supp. at 27 (citing Brown v. Bridgeport Rolling Mills Co., 245 F. Supp. 41, 46

(D.Conn. 1965).

> The basis for the Maidman decision is reflected in the directly related nature of a

motion to vacate under § 12 and a motion for confirmation under § 9 of the Act.  In many

respects, these two motions analytically are the opposite sides of the same coin.  This point was

driven home forcefully in the Bridgeport Rolling Mills decision, which involved an initial action

to vacate a labor arbitration award followed by a subsequent action to confirm the award.  The

question in Bridgeport Rolling Mills was whether the employer who had unsuccessfully sought

to vacate the award could attempt to resist the efforts of the employee union to confirm the same

award with arguments previously rejected in the initial proceeding.  The district court offered the

following insightful explanation in concluding that denial of the motion to vacate was in effect a

judgment confirming the challenged award pursuant to § 9.  To quote the court:

> > Viewing the prior proceeding strictly as one pursuant to Section 10
> > to vacate the award, however, the judgment entered therein had the
> > effect at least of collateral estoppel by judgment (and perhaps of
> > res judicata) in the instant proceeding pursuant to Section 9 to
> > confirm the award.  In a converse situation under the Arbitration
> > Act, the Court of Appeals for this Circuit in The Hartbridge, 57
> > F.2d 672, 673 (2 Cir. 1932), cert. denied, 288 U.S. 601, 53 S.Ct.
> > 320, 77 L.Ed. 977 (1933), stated:

> > Upon a motion to confirm the party opposing confirmation may
> > apparently object upon any ground which constitute a sufficient
> > cause under the statute to vacate, modify, or correct, although no
> > such formal motion has been made.  As we understand the statute a
> > motion to confirm puts the other party to his objections.  He cannot
> > idly stand by, allow the award to be confirmed and judgment
> > thereon entered, and then move to vacate the award just as though
> > no judgment existed.

> > In short, in a proceeding to confirm an award not only may an
> > opposing party object upon grounds which might be urged in

support of a proceeding to vacate an award; he must do so, or he waives his right to do so.

**Conversely, the same principle should be applied as a matter of common sense in a proceeding to vacate an award where, as here, the opposing parties (Brown and the Union) were required to object upon all grounds which might be urged in support of a proceeding to confirm the award.  Brown and the Union did just that in the prior proceeding (Civil No.8995); they not only opposed the motion to vacate the award but affirmatively moved for judgment on the record and pleadings. Accordingly, this Court's judgment in the prior proceeding denying the Company's motion to vacate the award and granting the motion by Brown and the Union for judgment on the record and pleadings was in effect a judgment confirming the award pursuant to Section 9.**

Id. at 44-45 (emphasis added).

The same practical considerations are reflected in the more recent decision of

Andrea Doreen Ltd v. Building Material Local Union 282, 250 F. Supp.2d 107, 111 (E.D.N.Y.

2003) which involved a motion by a labor union for summary judgment on its cross-claim to

collect allegedly due past wages after the claim was successfully arbitrated.  The district court

was faced with the question of how the motion for summary judgment should be construed in

relation to the arbitration award.  The district court held:

After consideration, the Court has decided to treat Local 282's motion for summary judgment as implicitly seeking to confirm the arbitration award.  Usually, arbitration awards are confirmed by a court when a party seeks confirmation pursuant to 9 U.S.C. § 9 (2000).  There is some authority, however, for treating other motions made after an award has been issued as implicitly seeking that confirmation.  Maidman v. O'Brien, 473 F. Supp. 25, 27 (S.D.N.Y. 1979) (noting that "there is authority for treating ... motions to dismiss as implicitly seeking ... confirmation" of the arbitration award, despite the fact that the defendants had not sought such confirmation explicitly pursuant to 9 U.S.C. § 9). Although the court in Maidman inferred a request for confirmation from a motion to dismiss, the court's reasoning also applies to the

23

> summary judgment motion in this case.  Local 282's motion for
> summary judgment (filed approximately two weeks after the award
> was issued) relies on the validity of the arbitration award to
> undermine Doreen's RICO claim.

Adrea Doreen Ltd., 250 F. Supp.2d at 44-45.

Several unpublished decisions also take the same commonsense approach advocated in Maidman.  For example, in Thyssen v. M/V Marcos, No. 97 CIV 6181(MBM), 2001 WL 902564 (S.D.N.Y. Aug. 7, 2001), the District Court for the Northern District of New York adopted Maidman to construe a motion to dismiss filed by the defendants as being a motion to confirm an arbitration award.  Id. at *1.  In so doing, the court noted that the defendants had asked the court to enforce the arbitration award and, second, both parties had relied upon law relevant to the enforcement of arbitration awards under the Act in making their arguments.  Id.

Another case to follow Maidman was Markowski v. Atzmon, Civ. App. No. 92-2865 (LFO), 1994 WL 162407 (D.D.C. April 19, 1994) which involved a petition by the plaintiff to vacate an arbitration award in a stock dispute.  Id. at *1.  In response, the defendant filed a motion for summary judgment.  The district court granted the motion to dismiss the petition to vacate the arbitration award after the one-year deadline in which to file a motion to confirm expired.  The defendant then filed a motion for an order confirming the favorable arbitration award.  Although the plaintiff did not object to the timeliness of the motion, the district court observed that nevertheless "an objection to the arbitration decision may be treated as a waiver of any objection to the timeliness of confirmation."  Id. at *2 (citing Maidman).

The district court in Markowski concluded that the plaintiff's petition to vacate the arbitration award and its attempt to appeal the dismissal of that petition would be "treated as

waivers of any objection by plaintiff to the timeliness of defendant's motion to confirm and it

will be treated as timely filed."  Id.  See generally, 3Fed. Proc. Forms § 4:125 ("Under some

circumstances, the untimeliness of an application to confirm an [arbitration] award may be

waived.") (West 2006) (citing Maidman); 4 Am.Jur.2d Alternate Dispute Resolution, § 230

(West 2005) ("Motion to dismiss claim on basis of arbitrator's decision may be treated as

implicitly seeking confirmation of the decision pursuant to 9 U.S.C. § 9, and when party objects

to arbitration decision on the merits, the possible untimeliness of the confirmation application

has been viewed as waived.") (citing Maidman); Thomas Oehnke, 3 Commercial Arbitration, §

134:3 (West 2005) ("If an untimely petition has been filed to confirm an award, and the opposing

party responds by objecting to the arbitration award on its merits, such an objection may waive

the untimeliness of the application to confirm the award.") (citing Maidman).

       Review of the record in this case reveals that on July 12, 2004, well within the

one-year limitation period of 9 U.S.C. § 9 (1999), Anson filed a motion to dismiss GE's motion

to vacate the arbitration award (DN 3).  Anson's motion to dismiss directly put at issue the

merits of that award including GE's claim that Judge McDonald, as arbitrator, lacked authority

to render an arbitration award and acted in manifest disregard of the law in doing so (DN 3, pp.

9-20).  Indeed, GE in its motion for a hearing (DN 8) asserted its "entitlement" to the arbitrator's

award.  Further, in its reply memorandum in support of its motion to dismiss GE's motion to

vacate, Anson specifically argued, "The time has now come to *affirm* the arbitrator's award by

dismissing GE's Motion to Vacate [sic] it."  (DN 11, p. 7) (emphasis added).  This specific

request for affirmation of the arbitrator's award was made on August 4, 2004 (DN 11) again well

within the one-year limitation period of § 9.

Only the most hypertechnical reading of the law would refuse to acknowledge what is apparent. Anson requested that the Court confirm the arbitration award. It is true that Anson did not use the term "confirmation" in doing so, but no case law cited to the Court establishes such a senseless ironclad requirement. Indeed, the law is to the contrary as evidenced by Maidman, Bridgeport Rolling Mills, Andrea Doreen, Markowski, and Thyssen.

Because the motion to dismiss filed by Anson expressly requested the affirmation of the arbitration award, and the parties fully argued the merits of the award under the applicable standard of § 10 of the Act, the Court concludes that Anson's motion to dismiss GE's motion to vacate is in all respects the practical equivalent of a motion to confirm and should be so construed for the purpose of the one-year statute of limitations of § 9. To hold otherwise would work a grave injustice to the underlying policies that support the Arbitration Act, which is "intended to be a speedy, efficient and relatively inexpensive method of resolving disputes." See Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974). None of these policy considerations will be served by this Court unnecessarily forcing Anson to begin a separate action at law in an attempt to enforce an arbitration award that Anson has already requested this Court to affirm in timely fashion. The Court accordingly deems Anson's motion to dismiss to be a timely filed motion for confirmation.

**"With Interest as on a Judgment."**

The Court has rejected GE's argument that Anson's motion to alter, amend or vacate is procedurally defective. The next question is whether Anson's request for what is, in effect, post-award, pre-judgment interest on the award at the rate of 12% under KRS 360.040 is

26

"substantively wrong" to use the words of GE.

The original arbitration and the amended arbitration decisions of Judge McDonald employ the same language.  Both awards specify a dollar amount to be awarded "with interest as on a judgment" to begin ten (10) days after entry of the award.  GE insists that the only appropriate statute to be applied under the circumstances is not the state post-judgment interest statute, KRS 360.040, but the federal interest statute found at 28 U.S.C. § 1961, which provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court ... such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [sic] the date of the judgment.

Id.  Based on 28 U.S.C. § 1961, GE argues that the appropriate interest rate for the calendar week before entry of the arbitration award on April 27, 2004, was 1.5% rather than the 12% rate established by KRS 360.040.  Using this interest rate, GE arrives at interest of $15,264 for the first year following entry of the amended award and daily interest of $42.45 thereafter.

Essentially, the Court must now determine whether the 12% or the 1.5% interest rate applies, or a combination thereof.  In addressing this question, it would be helpful to recall the fundamental principles that govern when a federal court sits to review an arbitration award under the FAA.  The role of the courts in such situations is extremely limited.  See Dawahare v. Spencer, 210 F.3d 666, 669-70 (6th Cir.), cert. denied, 531 U.S. 878 (2000) ("It is well-established that courts should play only a limited role in reviewing the decisions of arbitrators.") (citing Shelby County Healthcare Corp. v. A.F.S.C.M.E., Local 1733, 976 F.2d 1091, 1094 (6th Cir. 1992).  As Dawahare notes, "The Federal Arbitration Act presumes that arbitration awards

will be confirmed." Id. (citing 9 U.S.C. § 9 (1999)).  Accordingly, the courts will not "vacate an

arbitration award because the arbitrator made errors of fact or law."  National Wrecking Co. v.

International Brotherhood of Teamsters Local 731, 990 F.2d 957, 961 (7th Cir. 1993).  The

federal courts also will not alter an arbitration award where no mathematical error appears on the

face of such award.  Apex Plumbing Supply, Inc. v. U.S. Supply, Inc., 142 F.3d 188, 194 (4th

Cir.), cert. denied, 119 S.Ct. 178 (1998); Holden v. Deloitte and Touche, LLP, 390 F. Supp.2d

752, 780-81 (N.D. Ill. 2005) ("[I]f a district judge is satisfied that the arbitrators resolved the

entire dispute and can figure out what that resolution is, he must confirm the award.").

        These principles now apply to the question of what interest should be included in

the arbitration award.  At least on this point, the law is well-established in the Sixth Circuit.  GE

correctly cites to Estate of Riddle ex rel. Riddle v. Southern Farm Bureau Life Ins. Co., 421 F.3d

400, 409 (6th Cir. 2005) for the proposition that "In diversity cases in this Circuit, federal law

controls postjudgment interest but state law governs award of prejudgment interest."  This

principle has been often stated in the Sixth Circuit.  See FDIC v. First Heights Bank, FFC, 229

F.3d 528, 542-43 (6th Cir. 2000) ("In diversity cases in this circuit, federal law controls

postjudgment interest but state law governs awards of prejudgment interest."); Conte v. General

Housewares Corp., 215 F.3d 628, 633 (6th Cir. 2000) ("In a diversity case, state law governs the

district court's decision whether to award prejudgment interest ..."); Sterling v. Velsicol

Chemical Corp., 855 F.2d 1188, 1213 (6th Cir. 1988) ("In a diversity case, a federal court is

bound by state law on the question of prejudgment interest.")

        The Sixth Circuit discussed the application of this principle in a case involving

Kentucky law in Hale v. Life Ins. Co. of North America, 795 F.2d 22, 24 (6th Cir. 1986), wherein

28

the Court wrote:

> When a federal court's jurisdiction rests upon diversity, the award of prejudgment interest is governed by state law. <u>Glen Falls Ins. Co. v. Danville Motors, Inc.</u>, 333 F.2d 187 (6th Cir. 1964).  Under Kentucky law, if the claim is liquidated, interest follows as a matter of right, but if it is unliquidated, the allowance of interest is in the discretion of the trial court.  <u>General Accident Fire & Life Assur. Corp. v. Judd</u>, 400 S.W.2d 685, 687 (Ky. 1966)....  A liquidated claim is a '[c]laim, amount of which has been agreed on by the parties to [the] action or is fixed by operation of law.'  <u>Tapp v. Tapp's Trustee</u>, 185 S.W.2d 534, 535 (Ky. 1945).  If the amount of the claim is a sum certain, the debt is still liquidated even if the refusal to pay is based upon a good faith denial of liability.

<u>Id</u>. at 24.

A separate series of federal cases has addressed the calculation of prejudgment and post-judgment interest on arbitration awards.  The First Circuit in <u>Fort Hill Builders, Inc. v. National Grange Ins. Co.</u>, 866 F.2d 11, 14 (1st Cir. 1989) observed that, "Courts are not entirely in accord on the question of whether federal or state law governs entitlement to, and the rate of, post-award, pre-judgment interest."  <u>Id</u>.  The Third Circuit has implied in <u>Sunship, Inc. v. Matson Navigation Co.</u>, 785 F.2d 59 (3rd Cir. 1986) that, in a diversity action, federal law will govern both the entitlement to and the rate of post-arbitration award, pre-judgment interest.

The <u>Sunship</u> decision was rightfully criticized in <u>Northrop Corp. v. Triad Int'l Marketing S.A.</u>, 842 F.2d 1154, 155 (9th Cir. 1988), which concluded that state law determines the rate of post-award, pre-judgment interest in a diversity action to enforce an arbitration award under the Federal Arbitration Act.  In reaching this conclusion, <u>Northrop</u> explained that, "<u>Sunship</u> rests on the faulty premise that suits under the Federal Arbitration Act lie within federal question jurisdiction ... [a] premise [that] has been rejected by the Supreme Court."  <u>Northrop</u>, 842 F.2d at 1155 (citing <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 15 n. 9 (1984);

29

Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 25 n. 32 (1983).

See generally Hirshman The Second Arbitration Trilogy: The Federalization of Arbitration Law,

71 Va.L.Rev. 1305, 1341 (1985).

      Northrop applied state law to determine pre-judgment interest in a diversity suit

under the Federal Arbitration Act.  Id.  This approach is well justified given that "Congress

deleted a suggested provision making [28 U.S.C. § 1961] ... applicable to pre-judgment interest."

Taylor v. Central Pennsylvania Drug and Alcohol Services Corp., 890 F. Supp. 360, 368-69

(M.D. Pa. 1995) (citing Hollie v. Korean Air Lines Company Ltd., 834 F. Supp. 65, 70

(S.D.N.Y. 1993) (citing 127 Cong.Rec. 29865 (Daily Ed. Dec. 8, 1981)).

      Consideration of the above case law persuades the Court that the federal interest

statute, 28 U.S.C. § 1961 has no role to play in the calculation of post-award, prejudgment

interest.  The arbitration award entered by Judge McDonald cannot be appropriately

characterized as being a federal judgment.  It is not a federal judgment entered by district court

as required by the clear language of § 1961.  GE cites no persuasive authority that would lead

this Court to conclude otherwise.  The Riddle, First Heights, Conte, Sterling and Hale decisions

all confirm that the prejudgment interest rate to be applied in this diversity action is determined,

not by federal law, but by state law such as KRS 360.040.  Only when this Court entered its

federal judgment on August 25, 2005, did the 1.5% rate as determined by 28 U.S.C. § 1961

become applicable.

      The appropriate state statute to calculate the interest component of Judge

McDonald's arbitration award clearly is KRS 360.040 given the language of the arbitration

award that it shall bear interest "as if on a judgment."  His use of a post-judgment interest statute

30

to calculate what is, in effect, post-award, pre-judgment interest is not grounds to vacate under §

10 of the Act, nor has GE argued it to be so.  Even assuming that Judge McDonald was in error

in relying upon the state post-judgment interest statute to calculate post-award, pre-judgment

interest, his error would not constitute manifest disregard of the law sufficient to justify vacating

the award.  In fact, the Sixth Circuit has on at least one occasion in a diversity action applied

state law to calculate pre-judgment interest based on a state post-judgment interest statute.  See

generally FDIC v. First Heights Bank, FSP, 229 F.3d 528, 542-43 (6th Cir. 2000) (applying

Texas post-judgment interest statute to calculate an award of pre-judgment interest).

   Judge McDonald's intention to include an interest component in the *quantum*

*meruit* award is clear cut.  His reliance on KRS 360.040 was within his discretion as arbitrator as

the Hale decision confirms.  Obviously, he intended that Anson recover interest for any period of

prejudgment delay.  What he did not do, is enter a federal judgment on April 27, 2004, so as to

make his reference to post-judgment interest fall outside the substantive law of Kentucky.[2]

   The plain language of the final ruling in arbitration entered on April 27, 2004,

---

  [2] The Supreme Court of Kentucky recently discussed the discretion of the trial court or jury to award pre-judgment interest on an unliquidated or liquidated sum in 3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District, 174 S.W.3d 440, 451 (Ky. 2005).  The 3D Enterprises decision explains that, "The longstanding rule in this state is that pre-judgment interest is awarded as matter or right on a liquidated demand, and is a matter within the discretion of the trial court or jury on unliquidated demands." Id. (citing Nucor Corp. v. General Electric Co., 812 S.W.2d 136, 141 (Ky. 1991).  3D Enterprises continued to explain that, "Liquidated claims are 'of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values.'" Id. (citing 22 Am.Jr.2d DAMAGES § 469 (2004)).  Accordingly, Judge McDonald as arbitrator, acted entirely within his discretion under Kentucky law when he imposed pre-judgment interest as a component of the *quantum meruit* award.  His use of KRS 360.040 to achieve this result offers GE no grounds on which to successfully complain.

provides that, "Anson shall recover as an award from General Electric Company the sum of $1,020,029.90 with interest as on a judgment starting ten (10) days hence." Interest began to run on May 7, 2004, at a rate of 12% compounded annually. The interest that accrued from May 7, 2004, to May 6, 2005, totaled to $122,403.58. When this annual interest is included with the principal award amount, a total of $1,142,433.40 results. This amount then accrues interest at a rate of 12%, or a daily interest amount of $375.59 beginning on May 7, 2005, up until the date on which this Court entered its original judgment. Because the Court's original judgment was entered on August 25, 2005, the amount of interest accrued from May 7, 2005, until August 24, 2005, is $41,314.90. When this amount is added to the prior total of $1,142,433.40 a judgment amount of $1,183,372.71 results. This judgment amount shall bear post-judgment interest pursuant to the federal interest statute, 28 U.S.C. § 1961, at a rate of 1.5% from date of entry of the original federal judgment on August 25, 2005.

**Hearing Request of GE.**

In its response to Anson's motion to amend, GE requests a hearing before this Court on the appropriate rate of post-award, prejudgment interest. GE's request is based on the final two sentences of KRS § 360.040. This portion of the statute states that,

> Provided that when a claim for unliquidated damages is reduced to judgment, such judgment may bear less interest than twelve percent (12%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than twelve percent (12%). All interested parties must have due notice of said hearing.

KRS 360.040 (Michie 1982). Based on this language, GE now desires to argue in this Court that

the 12% interest rate far exceeds a reasonable market return on investments for the time period in question.

Unfortunately, GE waived its opportunity to raise this argument in a timely fashion.  The quoted language of the statute indicates that such an argument must be made prior to the decision to impose interest, rather than two years later.  GE had the opportunity to raise this issue before the arbitrator if it so desired.  In fact, GE successfully moved Judge McDonald to amend his original arbitration award to reduce the amount of the award by several hundred thousand dollars.  Had GE desired to take issue with the interest-related language of the final arbitration award, it could have easily done so.

This Court, as a federal court reviewing an arbitration award pursuant to §§ 9-12 of the Act, does not sit to conduct evidentiary hearings.  At most, the Court could remand the matter if such a hearing were justified.  Remand is a procedure, however, that should be used sparingly.  Whenever possible, "a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration."  Teamsters Local No. 579 v. B & M Transit, Inc., 882 F.2d 274, 278 (7th Cir. 1989).  Accordingly, GE's request for an evidentiary hearing to put on proof as to a more appropriate interest rate than the 12% rate established by KRS 360.040 is rejected as being untimely.


**Finality.**

General Electric correctly points out in its response to the motion to amend that the prior order of the Court entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure is incomplete in the sense that the order fails to discuss the interest of the intervenors

Leasing One Corporation and J.P. Morgan Chase Bank, both of whom are secured creditors of Anson that assert an interest in any arbitration award.  GE is concerned that unless the Court expressly considers the interest of these intervening parties in rendering its final judgment pursuant to Rule 54(b), the Court of Appeals may dismiss any attempted appeal.  GE's concerns are well-founded given the requirements of Rule 54(b) as explained in <u>General Acquisition, Inc. v. GenCorp., Inc.</u>, 23 F.3d 1022, 1026-27 (6th Cir. 1994).

In <u>General Acquisition</u>, the Sixth Circuit carefully set out the requirements for entry of the judgment pursuant to Rule 54(b).  <u>General Acquistion</u> explains those requirements as follows:

> Rule 54(b) of the Federal Rules of Civil Procedure permits immediate review of certain district court orders prior to the ultimate disposition of a case.  <u>See, e.g.</u>, <u>Curtiss-Wright Corp. v.General Electric co.</u>, 446 U.S. 1, 3, 100 S.Ct. 1460, 1462, 64 L.Ed.2d 1 (1980); <u>Liberty Mutual</u>, <u>supra</u>, 424 U.S. at 742-43, 96 S.Ct. at 1205-06; <u>Sears, Roebuck & co. v. Mackey</u>, 351 U.S. 427, 435, 76 S.Ct. 895, 899-900, 100 L.Ed. 1297 (1956).  Although Rule 54(b) relaxes the traditional finality requirement for appellate review, it does not tolerate immediate appeal of every action taken by a district court.  The rule is specifically designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multi-party action.  <u>Solomon v. Aetna Life Ins. Co.</u>, 782 F.2d 58, 60 (6th Cir. 1986).
>
> Rule 54(b) certification requires two independent findings. First, the district court must expressly direct the entry of final judgment as to one or more but fewer than all the claims of parties in a case. Second, the district court must expressly determine that there is no just reason to delay appellate review.  Fed.R.Civ.P. 54(b), <u>supra</u> note 7; Wright, Miller & Kane, <u>Federal Practice and Procedure: Civil 2d § 2655 (1983 & Supp. 1993)</u> (hereinafter Wright, Miller & Kane).  A district court certifying an order under Rule 54(b) must clearly explain why it has concluded that immediate review of the challenged ruling is desirable.  <u>Solomon</u>, 782 F.2d at 61-62.
>
> The first step in certification, entry of partial final judgment, is

34

satisfied where some decision made by the district court ultimately disposes of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action.  As the Supreme Court explained in <u>Curtiss-Wright</u>:

A district court must first determine that it is dealing with a final judgment.  It must be a judgment in the sense that it is a decision upon a cognizable claim for relief, and it must be final in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action.
446 U.S. at 7, 100 S.Ct. at 1464 (citing <u>Sears</u>, 351 U.S. at 436, 76 S.Ct. at 900); Wright, Miller && Kane § 2656.

The second step in certification, determination of no just reason for delay, requires the district court to balance the needs of the parties against the interests of efficient case management.  Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims.  <u>Curtiss-Wright</u>, 446 U.S. at 8, 100 S.Ct. at 1465.  Courts implementing rule 54(b) must strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants.  Wright, Miller & Kane § 2654.

<u>Id</u>. at 1026-27.

Here, the interests of efficient case management compel the Court to delay consideration of the claims of the secured creditors, Leasing One and Chase Bank, until such time as the Sixth Circuit has had the opportunity to determine whether the arbitration award entered by Judge McDonald was properly confirmed by this Court.  It makes little sense to determine the amount and priority of the secured creditors' interests in the arbitration award if the award itself is vacated by the appellate courts on review of this Court's decision.  Judicial economy and wise use of the Court's scarce resources both dictate that any hearings or arguments to establish the priority, nature and extent of the secured creditors' interests be delayed until such time as the arbitration award is either finally confirmed or vacated on appeal.

The Court therefor will enter a final judgment that denies the motion of GE to vacate the arbitration award of April 27, 2004.  In the same judgment, the Court will grant the timely request of Anson for confirmation of the award in the amount set forth above.

## CONCLUSION

In this case, the Court has embraced the mandatory statute of limitations interpretation of 9 U.S.C. § 9 (1999) of <u>Photopaint</u> in order to give full effect to the language of that statute.  Yet, at the same time, the Court has adopted the <u>Maidman</u> line of cases that permit the federal courts to liberally construe the motion papers of a party filed in opposition to a motion to vacate as being a motion for confirmation.  Here, Anson requested affirmation of the arbitration award in a timely fashion in its motion to dismiss well within the mandatory one-year limitation period.  This resolution not only preserves the full language of § 9 of the Act, but also supports the fundamental policy of the FAA for the speedy and efficient resolution of arbitration disputes.  It satisfies the criteria of <u>Cortez Byrd Chips</u>, as well.  The Court's reliance on KRS 360.040 to calculate the post-award, prejudgment interest rate is in accord with the clear intention of the arbitrator, which does not run afoul of § 10 of the Act.  For these reasons, the Court enters the accompanying final and appealable order.

This _____ day of March, 2006.


_____
Thomas B. Russell, Judge
United States District Court